**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARY HAMM, Appellant, | Civ. No. 08-5010 (DRD) |
| v. | **O P I N I O N** |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, Appellee. | |

*Appearances by:*

ESSEX-NEWARK LEGAL SERVICES, INC.
by: Michael S. McGillion, Esq.
5 Commerce Street
Newark, NJ 07102

*Attorney for Appellant*

RALPH J. MARRA JR.
Acting UNITED STATES ATTORNEY for the District of New Jersey
by: Maria Fragassi Santangelo
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

*Attorney for Appellee*

**DEBEVOISE, Senior District Judge**

Mary Hamm ("Hamm") seeks review pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 301, et. seq. ("the Act"), of the Commissioner of Social Security's

("Commissioner") final determination that she is not disabled, and therefore not entitled to Disability Insurance Benefits.[1] Hamm argues that the Court should remand her case because new evidence, not presented to the Administrative Law Judge ("ALJ") presiding over the adjudication below, supports her case that she is disabled, and thus should be reviewed by the ALJ as part of the entire record. In the alternative, Hamm argues that the ALJ failed to properly consider the effect of her physical pain and thus her nonexertional limitations of her ability to work. Also, she argues that the ALJ improperly utilized and applied the "grid" regulations to deny her benefits when she suffered nonexertional impairments not covered by the grids. Because the Court finds that the new evidence is material and that Hamm had good cause for not presenting it to the ALJ, the Commissioner's determination will be remanded for reconsideration of the new evidence.

## I. BACKGROUND

**1. The Proceedings:** On April 28, 2006, Hamm filed an application for benefits alleging disability since July 14, 1994 due to injuries arising when a bed frame separated and fell on her right knee and ankle while at work. The claim was denied initially on August 11, 2006, and again on reconsideration on December 22, 2006. A hearing was held before ALJ James Andres on March 5, 2008. Fifteen days before the hearing, Hamm first obtained counsel. At the end of the hearing, the ALJ closed the record. On March 21, 2008, the ALJ issued a decision finding that Hamm was not disabled in the period from her July 14, 1994, injury through December 31, 1999, the date when she was last eligible for insurance (hereinafter "the date last insured"). Hamm appealed the ALJ's decision to the Appeals Council, and on August 6, 2008, the Appeals

[1] Hamm also filed a concurrent application for supplemental security income (SSI), for which she was found eligible as of April 28, 2006 due to disability, but did not meet the financial requirements. Hamm's SSI claim is not an issue before this Court.

Council found no grounds for review; therefore, the ALJ's decision became the Commissioner's final decision. On October 9, 2008, Hamm filed a Complaint in the District Court of New Jersey seeking review of the Commissioner's unfavorable decision.

**2. The Record:** The record is separated into two sections: (1) evidence presented to the ALJ and (2) new evidence presented to the Appeals Council.

***i. Evidence Presented to the ALJ***

Hamm, a 54 year old woman, was 39 when the injury took place for which she is claiming disability. (R. at 110.) She has a high school education and two years of nursing school. (R. at 260.) She served as rehabilitation technician at Bellevue Hospital from 1980 until July, 14 1994, the date of her injury. (R. at 112.) Her responsibilities included lifting patients out of bed, helping them dress themselves, giving them baths, and assisting them with therapy. (R. at 54.)

On July 14, 1994, Hamm was lifting a bed in the hospital when the bed board fell and landed on her right leg. (R. at 110.) She complained of an onset of pain in her knee and ankle and had an MRI on October 14, 1994. Id. The MRI showed a grade II signal in both the medial and lateral meniscus, suggesting complete tears. Id. Following arthroscopic surgery on May 8, 1995, by Dr. Ronald A. Daly, Hamm's diagnosis was a "meniscal tear of the lateral meniscus, synovitis, and chondromalacia grade III." Id. Nearly three years later, on April 16, 1998, Hamm again had arthroscopic surgery, performed by Dr. Daly. Id.

A year and a half following that surgery, on August 11, 1999, Dr. I. Ahmad examined Hamm's right knee, which revealed some swelling, a 20 degree decreased range of motion upon flexion, and some difficult squatting. (R. at 113.) Also, Dr. Ahmad found that she had normal extension, a normal gait, intact reflexes and circulation, and no loss of sensation. Id. He

diagnosed a right knee sprain and arthroscopy of the right knee and found she could perform work on a light duty basis. Id. Lastly, He assessed a 15% scheduled loss of function of the right leg based on the worker's compensation guidelines. (R. at 114.)

Evidence dated after the date last insured was also presented to the ALJ. On March 7, 2000, Dr. Robert L. Hecht examined Hamm diagnosing her with internal derangement of the right knee. (R. at 110.) He also found diffuse swelling of a moderate nature and diffuse tenderness in the right knee, mild restricted extension and moderate restricted flexion of the right knee and positive creptius. Id. In Hamm's ankle, he found some diffuse swelling, mild tenderness and a mildly restricted range of motion. Id. X-rays of the right knee and ankle were unremarkable, and he assessed a 27 ½ % scheduled loss of use of the right leg. Id.

On December 26, 2001 Dr. Andrew B. Weiss reported that he had examined Hamm and reviewed "voluminous medical records" regarding her injury and dating back to October 14, 1994. (R. at 106.) He included a bullet-point list of them. (R. at 106-107.) He also reported that she was not receiving physical therapy, that she complained of right knee discomfort and disability, and that she could walk one-half block comfortably. (R. at 107.) He noted she walked with antalgic gait favoring the right knee and had limited range of active motion upon flexion and pain at extremes of motion. Id. An X-ray showed normal joint maintenance. Id. His diagnosis was moderate disability. Id.

Additional medical sources were presented to the ALJ that noted continued complaints of right knee pain as well as a third right knee surgery in February 2002. The ALJ dismissed them because they were dated "well after" the date last insured. (R. at 17.) Also, on May 18, 2006 Hamm submitted her "Disability Report" to the Social Security Administration ("SSA"). (R. at 53.) When asked on the Report for names of others who had her medical records, she included

contact information for Dr. Daly and the Workers' Compensation Board and requested that the SSA "[p]lease get this information [about medications and types of tests she had undergone] from my medical records."

At the hearing, Hamm testified that she has problems sitting because of a sharp pain up and down her knee. (R. at 267.) She stated she can sometimes stand for about five minutes with the help of a cane. (R. at 266.) She can lift up to eight pounds, but would have to put it down quickly. (R. at 268.) On a daily basis, she sits with her leg elevated and she tries to exercise, "just to keep her body moving." (R. at 268.) She has help getting in and out of the shower and sits on a chair while showering. (R. at 273.) She used to cook food, but does not do so now, although she has stood at the stove to cook an egg quickly. (R. at 274.) Her daughter-in-law testified that Hamm could probably walk a block but would have to rest before the block was over, maybe even for 20 or 30 minutes. (R. at 281.) Finally, she testified that Hamm sits and watches television with her leg propped up during most of the day. (R. at 280.)

***ii. Evidence Presented to the Appeals Council, but not Presented to the ALJ***

Hamm submitted new evidence to the Appeals Council, which was not presented to the ALJ. This evidence was dated before the date last insured. It includes three reports submitted to the State of New York's Workers' Compensation Board. One was dated July 15, 1994 – one day after Hamm's injury – from Dr. Ahmed who described her disability as a "total disability." (R. at 248.) A second was dated December 10, 1995, from her then treating orthopedic specialist, Dr. Daly, who reported that Hamm "is totally disabled and cannot work," and that she has had to "curtail her activities of daily living secondary to pain of the right knee joint." (R. at 240.) The third was dated September 13, 1996, again submitted by Dr. Daly who described Hamm's disability as a "total disability." (R. at 247.)

Additional evidence submitted to the Appeals Council and dated August 22, 1995, showed Dr. Daly found that after Hamm's first surgery the seriousness of her injury was "one grade removed from having a total right knee joint replacement," and that she was "totally disabled and cannot work." (R. at 241.)

## II. DISCUSSION

The first issue before the Court is whether the case should be remanded because new evidence was submitted to the Appeals Council that was not in the record presented to the ALJ. If the Court does not find cause for remand, then the issue is whether substantial evidence supports the Commissioner's decision that Hamm was not disabled from July 14, 1994 through December 31, 1999, Hamm's date last insured. In support of her petition, Hamm contends specifically that the ALJ (1) failed to properly assess her physical pain, (2) failed to consider all of her nonexertional limitations, including pain, (3) wrongly relied on the "grid" regulations to show the existence of other jobs in the national economy that she could perform, and (4) that Hamm's limitations met or medically equaled the requirements of Listing 1.02. Rejecting those claims, the Commissioner requests that this court affirm his judgment denying Hamm Disability Insurance Benefits.

### A. Standard of Review

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). A district court's review of the Commissioner's factual findings, however, is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district

court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

**B. Determination of Disability**

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or

profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work.* If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work.* If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(*v*). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

**C. The Commissioner's Findings and Conclusions**

Before the ALJ applied the five step analysis, he found that Hamm last met the insured status requirements of the Social Security Act on December 31, 1999. See 42 U.S.C. § 423(a)(1)(A) and (c)(1); 20 C.F.R. §§ 404.130, 404.315(a). (R. at 15.) Thus, Hamm must establish disability on or before that date in order to be entitled to a period of Disability Insurance Benefits. (R. at 13.)

At step one, the ALJ found that Hamm had not engaged in substantial gainful activity from her alleged onset date of July 14, 1994 through her date last insured of December 31, 1999.

At step two, the ALJ found that through the date last insured Hamm had a severe impairment of an "internal derangement of the right knee." (R. at 15.) "This impairment imposes more than a slight limitation on the claimant's ability to perform work related activity." Id.

At step three, the ALJ found that Hamm's impairment, involving the major dysfunction of a joint, neither met nor equaled Listing 1.02 of the Listing of Impairments. (R. at 16.) In reaching this decision, the ALJ questioned the credibility of Hamm's statements "concerning the intensity, persistence and limiting effects of [her] symptoms." (R. at 17.) Although he found that Hamm would have difficulty standing and walking for prolonged periods, he concluded that that limitation would still permit her to perform sedentary work. (R. at 16.) He partially relied on Dr. Ahmad's August, 1999 determination that she could perform light duty work. (R. at 18.) Thus, the ALJ found that Hamm retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (R. at 16.)

At step four, based on Hamm's RFC, the ALJ determined that she was unable to perform her past relevant work as a rehabilitation technician where she walked 8 hours, stood 7 hours, and lifted patients who weighed in excess of 100 pounds. (R. at 18.)

At step five, the ALJ considered Hamm's age on the date last insured (45 years old), education (two years of college), ability to communicate in English, work experience, and RFC. (R. at 18.) Appling the Medical-Vocational Rule 201.21, he concluded that work existed in significant numbers in the national economy that Hamm could perform. (R. at 18.) Thus, the ALJ found Hamm was not disabled under the Act and denied her benefits. (R. at 18.)

**D. Evaluation**

***i. Remand***

The Commissioner's determination that Hamm was not disabled was based on an incomplete record and will be remanded for reconsideration of the new evidence that was presented to the Appeals Council. The district court may order a "new evidence" remand under sentence six of 42 U.S.C. § 405(g) if the claimant satisfies a three-prong test. See Szubak v. Secretary of HHS, 745 F.2d 831, 833 (3d Cir. 1984). The evidence must be (1) "new" and (2) "material," and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id. Evidence is "new" when it has not previously been entered into the record and is "not merely cumulative of what is already in the record." Id. Evidence is "material" when it relates to the period in which benefits were denied and creates a reasonable possibility of a different decision by the Commissioner. Id.

Hamm satisfies prong one because the evidence was not previously in the record presented to the ALJ. Hamm satisfies prong two because the new evidence, which falls between July 15, 1994 and September 13, 1996, was dated before the date last insured. Also, the new evidence creates a reasonable possibility of a different decision by the Commissioner because three of the documents, which are from her then treating orthopedic specialist, state that Hamm's disability is a "total disability" and that Hamm "cannot work." (R. at 240, 241, 247.) This conflicts with the evidence relied on by the ALJ when he referred to Dr. Ahmad's August 1999 report that Hamm could perform "light duty work." (R. at 17.) Also, this conflicts with Dr. Weiss's 2001 report, which the ALJ referenced and which diagnosed Hamm as having a moderate disability. Id. The AJL noted that "the earliest evidence we have in the record on or prior to December 31, 1999 . . . is an August 1999 report of Dr. Ahmad." (R. at 17.) Surely evidence that is dated closer to the time of Hamm's alleged injury and that is in conflict with subsequent doctors' reports is material.

Hamm also satisfies prong three because good cause existed for the failure to incorporate such evidence into the record in a prior proceeding. First, the ALJ closed the record at the hearing even when there was reference in the record to further medical evidence that was dated before the date last insured, yet never sought out or examined. Hamm's attorney asked to keep the record open "to try to figure out the issue with the Title XVI and Title II," of which there was some confusion at the start of the hearing. (R. at 283.) He continued by stating that he could "provide [the ALJ] with a memo" about whether Hamm was eligible for Title XVI. Id. The ALJ responded that there was "no need to keep the record open," and he would "check into [sic] whether there was a Title XVI application...." Id. He questioned that "[m]aybe her income is in excess of the amount." Id. In his decision, the ALJ stated that Hamm met the medical requirements for her Title XVI claim based on medical vocational rule 201.16, but did not meet the financial guidelines because she was receiving Workers' Compensation benefits. (R. at 13.) Thus, the ALJ knew she was receiving Workers' Compensation benefits and knew she met the medical requirements for Title XVI. Yet, the ALJ did not fully "check into" documents relating to them.

Accordingly, the ALJ failed to do his duty to develop the record fully and fairly. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000) (citing Richardson v. Perales, 204 U.S. 389, 400-01 (1971). The Court of Appeals for the Third Circuit too has emphasized the ALJ's obligation to develop the record fully. See e.g., Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) ("ALSs have a duty to develop a full and fair record in social security cases. Accordingly, an ALJ must secure relevant

information regarding a claimant's entitlement to social security benefits."). The SSA's responsibility, as set out in 20 C.F.R. § 404.1512(d), is the following:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe the development of an earlier period is necessary.... We will make every reasonable effort to help get medical reports from your own medical sources when you give us permission to request reports. (emphasis added)

20 C.F.R. § 404.1512(d). A "reasonable effort" means making at least "an initial request for evidence." 20 C.F.R. § 404.1512(d)(1).

This obligation to develop the record "is most critical in situations in which social security claimants are not represented by counsel and thus may not be capable of putting the best face on their claims." In some cases, courts have held that the ALJ's obligation "is equally applicable where lawyers are handling the case." See Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); see also Boone v. Barnhart, 353 F.3d 203, 208 n.11 (3d Cir. 2004) (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001), Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000), and Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) with similar statements).

Here, Hamm filed for disability benefits in April, 2006. In February, 2007, Hamm requested a hearing. Not until February, 2008 was Hamm represented by counsel, which occurred only fifteen days prior to her hearing. Thus, although Hamm was represented by counsel, the Commissioner and the ALJ could and should have done more to develop the record, especially during the twenty-two months Hamm was without counsel.

Furthermore, Hamm informed the SSA that there were others who had medical records pertinent to her claim and provided addresses for Dr. Daly and the Workers' Compensation Board among others. Dr. Weiss's report, which was presented to the ALJ, referred to

"voluminous medical records" and included a bullet-point list of records relating to Hamm's injury that dated back to 1994. This evidence would seem to warrant "the development of an earlier period" by the SSA. Finally, Hamm asked the SSA to "[p]lease get this information [about medications and types of tests she had undergone] from my medical records," seemingly indicating her permission to request reports. The earlier record were particularly important because they included reports of Dr. Daly, who treated Hamm immediately after the accident, performed the operation and treated her thereafter.

The Court recognizes that claimants should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances. The Court of Appeals, in Szubak v. Sec'y of Health & Human Services, 745 F.2d 831, 834 (3d Cir. 1984), cautioned remanding for new evidence "because a claimant might be tempted to withhold medical records, or refrain from introducing all relevant evidence, with the idea of 'obtaining another bite of the apple.'" There, the claimant was not represented by counsel and because there was no sign that the claimant was trying to conceal evidence, the court remanded for good cause. Alternatively, in Mathews v. Apfel, 239 F.3d 589, 595 (3d Cir. 2001), the court did not find good cause to remand because the ALJ kept the record open, and yet the claimant did not submit the new evidence until more than seven months later.

Here, although Hamm was represented by counsel, it was not until fifteen days prior to the hearing. Similar to the situation Szubak, there is no evidence that Hamm was trying to conceal this new evidence. Indeed, according to Hamm, the new evidence was requested by counsel immediately following the hearing, and officially submitted as new evidence on May 16, 2008, less than 2 months after the ALJ's decision. Unlike Mathews, here, the ALJ closed the

record and even so, Hamm was able to obtain the records and submit them to the Appeals Council within two months.

Moreover, the Appeals Council which purportedly considered the new evidence, gave no explanation for rejecting it, even though the new evidence seemed to be contrary to the evidence on which the ALJ based his decision. "The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the ALJ hearing decision. It will then review the case if it finds that the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently on record." 20 C.F.R. § 404.970(b). The Appeals Council stated that it considered the additional evidence and "found that this information does not provide a basis for changing the ALJ's decision." (R. at 5-6.) However, it gave no explanation as to why multiple reports that are dated closer to her alleged injury and that describe Hamm's disability as "total" and provide that she "cannot work" are not contrary to reports given much later that state she can "do light duty work" (R. at 113) and that she has a "moderate disability" (R. at 103).

For an injury that occurred in 1994 and an administrative proceeding that began two years before the hearing, it seems reasonable that the entire record of material evidence, especially evidence in conflict with the evidence before the ALJ, should at least be reviewed by the ALJ. Thus, the Commissioner's determination will be remanded for reconsideration of the new evidence.

***ii. Hamm's Additional Claims***

Because the Court remands the case for reconsideration of the new evidence, it will refrain from ruling on Hamm's additional claims that the ALJ failed to properly assess her physical pain, failed to consider all of her nonexertional limitations, including pain, wrongly

relied on the "grid" regulations to show the existence of other jobs in the national economy that she could perform, and that her limitations met or medically equaled the requirements of Listing 1.02.

## II. CONCLUSION

Because the Court finds that the new evidence is material and that Hamm has good cause for not presenting it to the ALJ, the Commissioner's determination will be remanded for reconsideration of the new evidence.

The Court will enter an order implementing this opinion.

**s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 22, 2009